UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

WILLIAM LAPHAM,
a/k/a CHUNG SI WILLIAM LAPHAM,

        Plaintiff,

   - against -                       No. 06-Civ-6861 (CM)

VINCENT A PORACH, JR., and
VINCENT A. PORACH, JR., d/b/a
TEMPLE OF I CHENG PRAYING
MANTIS KUNG FU,

        Defendants.

---------------------------------------------------------------x

## ORDER DENYING PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

McMahon, J.:

     Plaintiff William Lapham claims to be the creator of an original form of Kung Fu called

"Praying Mantis Kung Fu."  He runs several martial arts temples where this form is taught.

Defendant Vincent Porach was plaintiff's student for several years and even worked for plaintiff

for a period.  In May of 1989, plaintiff and defendant entered into an agreement, pursuant to

which defendant was permitted to operate his own satellite school of "Praying Mantis Kung Fu."

The agreement contained various conditions, which plaintiff claims that defendant breached.

The satellite school was subsequently closed for reasons that are in dispute.

     Plaintiff filed this motion seeking to enjoin the defendant pendente lite from using the

allegedly copyrighted materials that defendant acquired from plaintiff during the period when the

agreement was in force.  Plaintiff also seeks to enjoin the defendant from using the allegedly

protected service marks associated with plaintiff's Kung Fu form.

Defendant contends that plaintiff is not entitled to copyright and trademark protection and has not met his burden on this application for a preliminary injunction.

Because, on the record before the court, plaintiff has not shown that he is likely to succeed on the merits, or that the balance of hardships tips decidedly in plaintiff's favor, plaintiff's motion for a preliminary injunction is denied.

**Facts**

Plaintiff established a studio, known as the "Temple of I Cheng," in or about 1970 in Yonkers, New York.  There, he purportedly devised a method of "Praying Mantis Kung Fu." (Lapham Aff. ¶ 7).[1]  Plaintiff has also opened temples in Pawling, New York, Boca Raton, Florida, Boone, North Carolina and Rhinebeck, New York.  (Lapham Aff. ¶¶ 10, 22-24).

In or around 1970, plaintiff claims to have "memorialized and published" an instruction manual entitled "Temple of I Cheng – Praying Mantis Kung Fu," ("the manual"), in which he described the form and fundamental principles of his methods.  (Lapham Aff. ¶ 7).  Plaintiff claims copyright protection in the manual and in certain instruction materials and videotapes used in teaching Praying Mantis Kung Fu taught at these studios.

In July 2005, plaintiff registered his copyright in a work called "The Teachings of the Temple of I Cheng," which he claims to have completed in the year 2005.  (Lapham Aff. Ex. 8).

---

[1] I say "purportedly" because defendant has submitted papers indicating that Praying Mantis Kung Fu was in fact devised 300 years ago by one Wong Long, and that plaintiff has been threatened with legal action for using the name and marks of a Grandmaster Lee Kam Wing, who apparently works out of Great Neck.  See Porach Aff. Ex. B, "HistoryofPrayingMantisKungFu.htm," and Ex. E., Letter to William Lapham from Raul Ortiz, Jr. of the NYSHQ International Seven Star Mantis Style Lee Kam Wing Martial Arts Assn.

Plaintiff used form TX (Text) to register the copyright.  Unfortunately, plaintiff does not attach a copy of this work that he submitted to the copyright office at the time of registration, nor does he describe it sufficiently for the court to understand whether any of the above-described works is the subject of the copyright registration.  However, I conclude that plaintiff could not possibly have submitted the manual, since plaintiff has submitted a sworn affidavit to this court in which he avers that he created the manual in 1970, not 2005, as alleged in the copyright application.

Plaintiff also claims protection in the service marks "Temple of I Cheng," "Praying Mantis Kung Fu" and "Having Demonstrated Great Progress in the Art and Way," which he uses to describe his services.  The mark "Temple of I Cheng" was registered in early 2006.  (Lapham Aff. Ex. 9).  As far as the court is aware, the other marks were never registered.

From 1986 to 1996, defendant attended classes at the Temple of I Cheng in Pawling, New York.  (Porach Aff. ¶ 3).  Defendant was designated a teacher to lower level students at the school, and showed progress in plaintiff's classes.  (Porach Aff. ¶¶ 3, 4).  During that time, defendant videotaped instructions of the method of Praying Mantis Kung Fu, which he claims as his property because the tapes were for his own personal use.  (Porach Aff. ¶ 19).  Plaintiff contends that the videotapes are his property, as defendant videotaped these instructions while acting as plaintiff's photography assistant.  (Lapham Aff. ¶ 11, Ex. 1).  Obviously these works cannot be the subject of the 2005 copyright registration, either, since they were prepared between 1986 and 1996, while defendant was working for plaintiff – not in 2005, the date of creation as attested in the copyright registration document.  Moreover, they are not textual works, and so could not be registered on Form TX, which was used to effect the 2005 registration.

Defendant states that, during the time he worked for plaintiff, he received instructional

materials in an untitled looseleaf binder, which contained previously published materials from other martial arts magazines.  (Porach Aff. ¶ 5).  Defendant denies receiving any document, book or video materials titled "The Teachings of the Temple of I Cheng" from plaintiff.  (Porach Aff. ¶ 6).

In or about 1989, plaintiff and defendant entered into an agreement under which defendant would operate a satellite school known as the Temple of I Cheng.  (Porach Aff. ¶ 4, Lapham Aff. ¶ 16).  The terms of this agreement are in dispute.  Plaintiff contends that, pursuant to the terms of the agreement, defendant was

> allowed to teach [plaintiff's] method of Praying Mantis Kung Fu, to make use of copyrighted materials which [plaintiff] had authored, to hold himself out as being associated with [plaintiff] and [plaintiff's] Temple of I Cheng, to use trademarks [plaintiff] had devised and continued to use in the Temple of I Cheng, and to use personal property belonging to the Temple of I Cheng.

(Lapham Aff. ¶ 17).  Also pursuant to plaintiff's interpretation of the agreement, defendant was required to pay plaintiff 50% of all dues collected from students enrolled in the satellite school, teach the method as prescribed by plaintiff and continue his training with plaintiff or one of plaintiff's associates.  (Lapham Aff. ¶¶ 18-20).

Defendant asserts that plaintiff told him that he could run the temple as he saw fit as long as he would send the plaintiff 50% of the proceeds defendant received.  (Porach Aff. ¶ 4).

Defendant opened his own satellite school out of his home in Hopewell Junction, New York in or around 1989.[2]  (Id.).

From the period of 1990 to 2003, plaintiff traveled to Florida and North Carolina where

---

[2] Plaintiff states that the satellite school was opened in the town of Wappinger Falls, New York.

he opened Praying Mantis Kung Fu temples and used the service marks "Temple of I Cheng" to describe his services.  (Lapham Aff. ¶¶ 22-24).  During this time, defendant operated his satellite school in Dutchess County.  (Porach Aff. ¶ 14).  Plaintiff returned to New York in 2003, and established a Temple of I Cheng studio in Rhinebeck, New York.  (Porach Aff. ¶ 15).  He terminated the agreement with the defendant on or about April 1, 2004.  (Lapham Aff. ¶ 34, Porach Aff. ¶ 16).

Plaintiff contends that he terminated the agreement with defendant because defendant breached the contract terms.  The reasons included defendant's failure to secure insurance, a special use permit or a certificate of occupancy, failure to report an enrolled student, and failure to adhere to teaching methods and standards promulgated by plaintiff.  (Lapham Aff. ¶¶ 27-32).

Defendant states that plaintiff diverted most of defendant's students to plaintiff's new school in Rhinebeck and made new demands of him.  (Porach Aff. ¶ 16).  Defendant argues that he agreed to close his school, "in part because he was tired of dealing with the [plaintiff's] demands, and in part because [he] did not have time to teach due to a serious family matter that required [his] attention."  (Id.).

Plaintiff submits that defendant has continued operating a temple called the Temple of I Cheng in his house and has unlawfully used the alleged proprietary materials – whatever they are.  (Pl.'s Mot. Prelim. Inj. at 7).  Plaintiff has demanded several occasions that defendant return the materials that belong to plaintiff, including the videotapes.  (Lapham Aff. ¶ 35).

Defendant contends that he has not taught any martial arts classes nor taught any students the Praying Mantis Kung Fu form since April 2004, though he says he hopes to resume teaching in the future.  (Porach Aff. ¶¶ 6, 18).  Defendant also contends that he does not possess any

copyright protected materials.  (Porach Aff. ¶ 17).  However,  defendant filed a Certificate of Doing Business Under Assumed Name ("d/b/a/") of Temple of I Cheng Praying Mantis Kung Fu with the Dutchess County Clerk's Office in Poughkeepsie, New York.  (Lapham Aff. Ex. 6). Plaintiff claims that this means defendant is operating a business under plaintiff's trademark. Defendant contends that he only filed the d/b/a to prove that plaintiff's allegations of ownership were untrue, since he thinks he would not have been able to file the d/b/a if the plaintiff had exclusive rights in the phrases "Temple of I Cheng" or "Praying Mantis Kung Fu."  (Porach Aff. ¶ 18).

Plaintiff filed this case on September 7, 2006.  He pleads causes of action sounding in federal copyright infringement, federal trademark infringement and unfair competition under the Lanham Act, as well as violations of New York's General Business Law constituting deceptive acts and practices, false advertising and dilution/injury to plaintiff's business reputation.  He seeks preliminary and permanent injunctive relief, restraining the defendant from copying, re-producing, displaying, publishing, printing and distributing material from plaintiff's copyrighted materials and videos and from using the service marks, "Temple of I Cheng," "Praying Mantis Kung Fu," or "Having Demonstrated Great Progress in the Art and Way."  (Pl's Mot. Prelim. Inj. at 8).

## Discussion

The only matter before the court today is the plaintiff's motion for a preliminary injunction.  In this Circuit, a preliminary injunction should be granted if the moving party shows that he will suffer irreparable harm absent injunctive relief and either (1) that he is likely to succeed on the merits of his claim; or (2) that there are sufficiently serious questions going to the

merits to make them fair grounds for litigation, and that the balance of hardships tips decidedly in favor of the moving party.  Wright v. Giuliani, 230 F.3d 543, 547 (2d Cir. 2000); Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992).  Under either standard, plaintiff fails to meet his burden.  Therefore, his motion for a preliminary injunction is denied.

I.      **Plaintiff Has Not Shown Likelihood of Success
        on the Merits of Either of His Federal Claims**

        A.      *Copyright Infringement*

        A prima facie case of copyright infringement will give rise to a presumption of irreparable harm, which may be effectively demonstrated by proof of success on the merits.  ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 64 (2d Cir. 1996).  In order to establish a prima facie case of copyright infringement, plaintiff must show: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  It is a prerequisite to bringing suit on the copyright in any United States work that the plaintiff's claim to the work be registered.  17 U.S.C. § 411(a) (2006).

        It is correct, as plaintiff notes, that the issuance of a certificate of registration for a copyright is prima facie evidence of the validity of the copyright.  Hasbro Bradley, Inc., v. Sparkel Toys, Inc., 780 F.2d 189, 192 (2d Cir. 1985).  However, prima facie cases can be rebutted.  In this case, plaintiff's case unravels pretty quickly.

        *The Manual*: As noted above, it is not clear exactly what plaintiff registered with the Copyright Office back in 2005.  On its face, it was a work of text/literature, since he used Form TX, for registering a non-dramatic literary work.  (Lapham Ex. 8).  Moreover, according to the

registration statement, the registered work was created (or at least completed) in the year 2005. It is, therefore, impossible for the copyrighted work to be the instructional manual "The Teachings of the Temple of I Cheng," which the plaintiff swears to this court was created and published in 1970!  (Lapham Aff. ¶ 7).

However, from the Memorandum of Law submitted in support of the motion, it appears that plaintiff is claiming precisely that – that the 1970 manual was the document registered with the Copyright Office in 2005.[3]  If that is indeed the case, plaintiff not only has failed to prove likelihood of success on the merits, he may have demonstrated his own commission of fraud on the Copyright Office, which could lead to the invalidation of his copyright registration.  2 M. Nimmer and D. Nimmer, Nimmer on Copyright § 7.20[B] (2006).

Moreover, assuming plaintiff claims copyright protection in his instruction manual, "The Teachings of the Temple of I Cheng," then he has rebutted his own prima facie case by averring to this court that he first published that manual *in 1970*.  (Lapham Aff. ¶ 7).  The manual is therefore subject to the requirements of the 1909 Copyright Act.  17 U.S.C. § 10 (1909 Act) (repealed 1976).  And under that law, the work has passed into the public domain, because it was published with a defective notice of copyright.

Statutory copyright protection under the 1909 Act was achieved "by publication . . . with the notice of copyright required by this title."  Any publication not in compliance with these requirements automatically caused the work to fall into the public domain.  Nat'l Comics Publ'ns, Inc. v. Fawcett Publ'ns, Inc., 191 F.2d 594, 598 (2d Cir. 1951).

Compliance with copyright notice under the 1909 Act requires that the work bear the

---

[3] Admittedly, the court is doing some guess work here.

term  "Copyright" or "Copr." (which includes the familiar "c" in a circle), together with the name of the proprietor of the work and the year in which the material was created to be placed on the proprietary work.  17 U.S.C. § 18 (1909 Act) (repealed 1976).

Plaintiff's instruction manual "The Teaching of the Temple of I Cheng" fell into the public domain if it did not bear the requisite notice when it was published back in 1970.  Sanga Music, Inc. v. EMI Blackwood Music, Inc., 55 F.3d 756, 760-61 (2d Cir. 1995).

Plaintiff has not submitted to this court evidence that he met the requirements as proscribed by the 1909 Copyright Act.  Indeed, plaintiff did not even submit a copy of the manual, let alone the page on which the publication notice appears.  The copy of what appears to be the cover page of some document (possibly the manual) was submitted by the plaintiff in support of his motion.  (Reply Br. Ex. A).  It contains the familiar "c" in a circle in the lower right hand corner, but lacks the name of the author and the date of creation, both of which are necessary elements of a valid copyright notice by the 1909 Act.  (Id.).  If this is the cover page of the manual, it is evidence that the document was published without the requisite statutory notice, and so has fallen into the public domain.  And if Reply Br. Ex. A is not the cover page of the 1970 manual, then plaintiff has not offered the court proof that the manual was published with any notice – even a defective notice – and so I cannot conclude that he is likely to prevail on any claim that a valid copyright subsists in the document.

Because plaintiff has not established that the manual was published with legally effective notice of his copyright, he has not proved that he is likely to succeed on the merits of any federal

copyright infringement claim involving the 1970 manual.[4]

Even if plaintiff had the ability to sue for copyright infringement, he would not be entitled to a preliminary injunction because he has not offered any evidence tending to show that defendant infringed on his copyright.  Copyright infringement requires copying!  4-13 M. Nimmer and D. Nimmer, Nimmer on Copyright § 13.01[B] (2006).

There is no evidence in the record before the court that defendant has made a single infringing copy of plaintiff's registered work, or that he has illicitly created any infringing derivative work.  Defendant's mere possession of a copyrighted item does not infringe the copyright.  Without evidence that defendant copied or disseminated plaintiff's instructional materials and videotapes, plaintiff has not demonstrated likelihood of success on a copyright infringement claim.  Laureyssens v. Idea Group, Inc., 964 F.2d 131, 139 (2d Cir. 1992).

Plaintiff asserts a claim for common law copyright, but works created and published prior to the effective date of the 1976 Copyright Act, like the manual, automatically lost their common law copyright upon publication.  1 M. Nimmer and D. Nimmer, Nimmer on Copyright § 4.01[B] (2006).  Distribution of the manual to students qualified as publication under the 1909 Act.  17 U.S.C. § 26 (1909 Act) (repealed 1976).  Therefore, on the record before me, the manual is not entitled to common law copyright protection.

*Instructional Materials and Videotapes*:  Plaintiff also claims to own the copyright in instructional materials and videotapes used in conjunction with "Praying Mantis Kung Fu." Exactly what these "instructional materials" are or when they were created is not made clear.

_____

[4] Resolution of the issue of whether plaintiff committed fraud on the copyright office by registering a document that had passed into the public domain more than three decades earlier (and by stating that the document was created in 2005) will have to abide discovery.

The videotapes are the ones created during the period when defendant allegedly served as plaintiff's videographer, which was after the effective date of the 1976 Copyright Act.

Under the 1976 Copyright Act, a plaintiff must prove both valid ownership of a registered copyright and unauthorized copying of the registered work.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  To establish unauthorized copying, plaintiff must show that the work was actually copied and that the copying was unauthorized. Laureyssens, 964 F.2d at 139-40.  And of course plaintiff must have registered the works with the Copyright Office as a prerequisite to suit.

The only possible copyright claims in works fixed in a tangible medium created after the effective date of the 1976 Copyright Act are federal claims.  There is no common law copyright for any work fixed in a tangible medium after the effective date of the 1976 Copyright Act. 1 M. Nimmer and D. Nimmer, Nimmer on Copyright § 2.02[B] (2006); 17 U.S.C. § 301 (1976 Act).  The videotapes are fixed in a tangible medium, and so are not eligible for common law copyright protections.

Assuming arguendo that he owns the copyright in the videotapes, plaintiff has not established a right to sue for infringement of any videotapes.  Videotapes are not registered for copyright using Form TX, but rather using Form PA.  Plaintiff has not submitted any evidence that he ever registered any copyrighted material using Form PA.  Absent proof that plaintiff has registered the videotapes with the Copyright Office, he has no right to sue for infringement of those works.

Because plaintiff has not submitted the materials actually deposited with the Copyright Office, the court cannot tell whether the other "instructional materials" referred to in plaintiff's

11

complaint are covered by the 2005 copyright registration, and cannot tell whether these materials are the same as the materials that were given to the defendant long before 2005 (which would, of course, undercut the claim in the copyright registration that the materials were created in 2005, and contribute to the possibility of fraud on the Copyright Office).  By failing to submit the instructional materials to the court,  plaintiff has failed to establish likelihood of succeeding on the merits of his claim that plaintiff infringed these materials.

But there is more.  Assuming, arguendo, that plaintiff owns a valid and subsisting copyright in either the videotapes or in some instructional materials that can be found in the defendant's possession – and that such materials were in fact registered with the Copyright Office – plaintiff has not established likelihood of success on the merits of a claim for copyright infringement because he has submitted no evidence of any unauthorized *copying* of the materials by defendant.  As noted above, it is unauthorized *copying*, not unauthorized *possession*, that is prohibited by the Copyright Act.

Plaintiff submitted a letter affidavit from one John Horne that defendant maintained a temple in his home, holding classes on Mondays and Wednesdays at 9 PM, for which he charged $50/month.  (Lapham Aff. Ex. 7).  Horne even claims actually to have attended a class on Monday June 20, 2005.  (Id.).[5]  However, there is no evidence (certainly nothing in Horne's letter) to indicate that defendant made any copies of any materials that are on deposit in the Copyright Office, or that he improperly disseminated illicit copies of these materials to Horne or

---

[5] Plaintiff submits letters from other students of defendant's, but it is clear that these individuals were studying with Porach during the period prior to the termination of defendant's agreement with plaintiff.  They are apparently offered for the purpose of justifying Lapham's decision to terminate his arrangement with plaintiff.

to anyone else following the April 2004 termination of the agreement between plaintiff and defendant.  That defendant has not given back materials he received from plaintiff does not mean that he has made or disseminated any unauthorized copies of those materials.

B.  *Trademark Infringement*

Plaintiff is entitled to protection of his *registered* service marks under Section 32(1)(a) of the Lanham Act.  Section 32(1)(a) prohibits the use or reproduction "in commerce" of any "registered mark in connection with the sale, offering for sale, distribution or advertising of any goods" which is "likely to cause confusion."  15 U.S.C. § 1114(a) (2006).  To succeed on a claim of trademark infringement plaintiff must show proof of defendant's use of the mark in connection with goods or services.  <u>SMJ Group Inc., v. 417 Lafayette Rest. LLC</u>, 439 F. Supp. 2d 281, 286 (S.D.N.Y. 2006).

Plaintiff has submitted evidence that he registered the words "Temple of I Cheng" with the United States Trademark Office.  (Lapham Aff. Ex. 9).  He has not offered proof of registration of any other mark.  However, he claims rights in the unregistered marks "Praying Mantis King Fu" and "Having Demonstrated Great Progress in the Art and Way."  Plaintiff seeks protection for these unregistered marks under Section 43(a) of the Lanham Act.  15 U.S.C. § 1114 (2006).

I will first consider the registered mark "Temple of I Cheng," and then the unregistered marks.

*Plaintiff's Registered Mark*: The evidence of misuse of the registered mark subsequent to the termination of the Agreement between plaintiff and defendant in 2004 consists of the fact

that Porach filed for a Certificate of Doing Business under the name "Temple of I Cheng Praying Mantis King Fu."  (Lapham Aff. Ex. 6).  The Certificate of Doing Business is prima facie evidence that defendant has misused the registered mark.

Defendant offers a flimsy and nonsensical excuse for filing the d/b/a certificate.  He says that he filed this certificate because he thought that doing so would somehow establish that plaintiff was not the owner of the name "Temple of I Cheng."  The court is not aware of any legal basis for this conclusion and does not find it particularly persuasive.

However, in order to obtain a preliminary injunction against the misuse of the registered mark, it is not enough to demonstrate misuse of the mark.  A plaintiff must also demonstrate a likelihood of confusion about the source or sponsorship in the marketplace that establishes likelihood of success on the merits, as well as irreparable harm.  Standard and Poor's Corp. v. Commodity Exch., Inc., 683 F.2d 704, 708 (2d Cir. 1982).  And he must demonstrate that the harm that would result from the misuse of his mark is imminent, or it will not be deemed irreparable.  See Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985).

To determine whether there is a likelihood of confusion as to source or sponsorship, a court considers the eight factors enumerated by Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961): (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the products, (4) actual confusion, (5) the likelihood that the plaintiff will bridge the gap, (6) the defendant's good faith in adopting the mark, (7) the quality of the defendant's products, and (8) the sophistication of the purchasers.  Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 256 (2d Cir. 1987).

The first Polaroid factor, the strength of the mark, may be proved by "its tendency to

identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." <u>McGregor-Doniger Inc. v. Drizzle, Inc.</u>, 599 F.2d 1126, 1131 (2d Cir. 1979).  Strength of one's mark may also be described as its "distinctiveness."  Restatement of Torts, § 731(f), Comment e at 602.  Trademarks may be categorized into four different categories: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.  <u>Abercrombie & Fitch Co. v. Hunting World, Inc.</u>, 537 F.2d 4, 9 (2d Cir. 1976).  These terms are arrayed in ascending order reflective of their level of distinctiveness and degree of protection accorded.  <u>Id.</u> It follows that arbitrary and fanciful marks are given more protection than generic, which gets less protection than descriptive marks.

The record, unfortunately, gives the court precious little to work with in deciding where the registered mark "Temple of I Cheng" falls on this continuum.  The mark might well be fanciful with inherently distinctive qualities, but plaintiff's manifestly inadequate motion papers do not even take a position on this issue.  All the papers say is that the mark is "distinctive" because it has been used by plaintiff for several years.  The record contains no information about the words "I Cheng," including whether those words are associated with martial arts in general or Praying Mantis Kung Fu in particular.  Plaintiff has the burden of establishing the level of protection his mark warrants, but he has not embraced it.

The second and third <u>Polaroid</u> factors, degree of similarity of the two marks and competitive proximity of the products, augur in favor of a preliminary injunction.  The defendant has filed a d/b/a certificate using exactly the same name as plaintiff's registered trademark, and both plaintiff and defendant live and work in Dutchess County, New York.

However, there is no evidence in the record of any actual confusion between plaintiff and

defendant, which is the fourth <u>Polaroid</u> factor.  Plaintiff submitted a series of letters from persons who studied with defendant.  But all but one of those letters were submitted by persons who studied with defendant at a time when he still was authorized, under his agreement with plaintiff, to offer martial arts instruction using plaintiff's methods and service marks.  None of those letters indicates that there is any actual confusion between plaintiff's operation and anything done by defendant in the only period that matters – the period when defendant was not authorized to use plaintiff's registered mark.

The one letter from a person who interacted with defendant after he and plaintiff went their separate ways –  Mr. Horne – also does not evidence actual confusion.  Nothing in Horne's June 30, 2005 letter affidavit states or suggests that he (Horne) thought he was going to a sifu associated with plaintiff when he visited defendant.  Moreover, Mr. Horne's visit came a year before defendant filed the potentially confusing certificate of doing business!  There is not a shred of evidence that anyone associated defendant with plaintiff's registered mark after defendant did the one and only thing that constitutes misuse of that mark – filing the d/b/a.  Therefore, there is no evidence of actual confusion on the record before the court.

The fifth <u>Polaroid</u> factor, the likelihood that the plaintiff will bridge the gap to defendant's market, is inconclusive.  The Horne letter (Lapham Ex. 7) does not indicate that the defendant was using the registered mark "Temple of I Cheng" at the time he allegedly offered to teach Mr. Horne Praying Mantis Kung Fu.  And while defendant's filing of the d/b/a certificate is evidence of misuse of the mark, there is absolutely no evidence that plaintiff has ever advertised under the name "Temple of I Cheng" or opened any commercial establishment using plaintiff's mark.  Of course, if defendant were to begin using plaintiff's mark in commerce, I

16

would be constrained to conclude that he was likely to "bridge the gap" to plaintiff's market, because he lives and works in plaintiff's primary market. But the record before me lacks any evidence that defendant is in fact using plaintiff's registered mark (which is different from teaching Praying Mantis Kung Fu).

The sixth <u>Polaroid</u> factor weighs in plaintiff's favor. Defendant used to be a "licensee" of plaintiff; he knew that plaintiff claimed a trademark in the name Temple of I Cheng. He cannot possibly claim that he filed for a d/b/a certificate using the phrase "Temple of I Cheng" in good faith, or in ignorance of plaintiff's contention that the phrase is a proprietary mark. In fact, plaintiff's argument that he filed the d/b/a certificate in order to establish that plaintiff did not own the mark "Temple of I Cheng" establishes that he did not act in good faith or in ignorance of plaintiff's ownership claims.

The seventh <u>Polaroid</u> factor is the quality of defendant's product. There are disputed issues of material fact about whether defendant was offering any product at all, and there is certainly no evidence that he was offering his services using plaintiff's registered mark. There were complaints about defendant's teaching during the years when he was associated with plaintiff, which is some evidence that, if defendant were in fact teaching under the d/b/a, he would be offering substandard services that might tend to tarnish plaintiff's reputation. But there is no evidence that defendant is teaching at all at the present time, let alone that he is teaching under the name "Temple of I Cheng."

The last <u>Polaroid</u> factor relates to the sophistication of the customers who might (or might not) be misled. Plaintiff offers no evidence about the level of sophistication of the martial arts customer base in Dutchess County and the court is unwilling to make any (possibly

17

unwarranted) assumptions in that regard.

Thus, plaintiff has failed to offer evidence that would enable the court to conclude that his mark is a strong or distinctive mark; he has established that defendant has misused the mark in bad faith, but only by filing a certificate of doing business, not by actually doing business under the name Temple of I Cheng; and he has offered no evidence of confusion resulting from the filing of the d/b/a certificate and no evidence that defendant is even teaching Praying Mantis Kung Fu at present, let alone that he is teaching it in a way that would redound to plaintiff's detriment.  I conclude that plaintiff has not established a likelihood of success on the merits on the woefully inadequate record presently before the court, because he has not established likelihood of confusion under the Polaroid factors.

But even if plaintiff had established that the Polaroid factors weighed strongly in his favor on the issue of likelihood of confusion, he would not be entitled to a preliminary injunction.  A plaintiff in a trademark infringement case must be prepared to demonstrate that harm (i.e., confusion) is imminent, or the harm will not be deemed irreparable and no preliminary injunction will issue.  A significant delay in applying for injunctive relief after the alleged misuse of a registered mark begins "tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of preliminary injunction for trademark infringement."  Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) (vacating preliminary injunction after nine month delay in bringing suit).

The misuse of plaintiff's registered trademark occurred when plaintiff filed his certificate of doing business with the Dutchess County Clerk under the name, "Temple of I Cheng Praying

Mantis Kung Fu."  The d/b/a certificate was filed on October 26, 2004 (Lapham Ex. 6) and

plaintiff filed this lawsuit on September 5, 2006.  The passage of two years' time is prima facie

evidence that harm from misuse of the mark is not imminent, and so is not irreparable.  Citibank,

756 F.2d at 276.

*Plaintiff's Unregistered Marks*:  An unregistered mark is entitled to the same protection

as a registered mark.  Two Pesos v. Taco Cabana, 505 U.S. 763, 768 (1992).  As with registered

trademarks under Section 32(1)(a), liability under Section 43(a) of the Lanham Act requires

proof of likelihood of confusion.  Id. at 769-70.  This means that the court must consider the

same factor just discussed – the Polaroid factors and the imminence of the purported harm.

Consideration of the Polaroid factors leads to the conclusion that defendant's use of the

unregistered mark "Praying Mantis Kung Fu" (which also appears in the d/b/a certificate filed by

defendant) is not likely to lead to confusion about source or sponsorship.

The alleged mark "Praying Mantis Kung Fu" is clearly descriptive.  A term is considered

descriptive if it "conveys an immediate idea of the ingredients, qualities, or characteristics of the

goods."  See Stix Products, Inc. v. United Merchants & Mfrs., Inc., 295 F. Supp. 479, 488

(S.D.N.Y. 1968).  "Praying Mantis Kung Fu" is a form of martial arts, and so is descriptive of

the services that defendant (accordingly to him) "hopes" to offer some day.  See Papercutter, Inc.

v. Fay's Drug Co., 900 F.2d 558, 561-62 (2d Cir. 1990) ("[e]xamples of descriptive terms are

terms conveying 'the characteristics of the goods, services, or business' or indicating the

purpose, functions, size, quantity, capacity, or merits of a product, the effects of its use or the

class of intended purchasers.").

A descriptive term is only given trademark protection "if the holder of the mark can

19

prove secondary meaning due to public association of the trademark with the holder's product or service." Id. at 562.  The evidence that "Praying Mantis Kung Fu" has a secondary meaning associated with plaintiff is not non-existent, but it is extremely weak.  In plaintiff's favor, persons who had studied with defendant during the period when the Agreement was operative complained to plaintiff about defendant's teaching methods, which suggests that in Dutchess County, at least, plaintiff was identified with this form of martial arts.  But those letters date from a time when defendant was plaintiff's licensee.  The most logical inference is that these individuals knew that defendant was associated with plaintiff, rather than knowing that plaintiff and plaintiff alone was exclusively associated with "Praying Mantis Kung Fu."  Moreover, there is evidence in the record that this form of Kung Fu is hundreds of years old and is widely practiced.  Plaintiff is apparently not the only person who teaches "Praying Mantis Kung Fu" in the State of New York, and there seems to be some dispute among the teachers about whether he is really entitled to hold himself out as a teacher of this particular form.

Thus, on the record presently before me, the term "Praying Mantis Kung Fu" does not appear to be exclusively associated with plaintiff and it has not acquired a high level of distinctiveness, and so is not entitled to as much protections as an arbitrary or fanciful mark that has inherently distinctive qualities.  See Mushroom Makers, Inc. v. R.G. Barry Corp., 580 F.2d 44, 48 (2d Cir. 1978).

The second and third factors of the Polaroid inquiry weigh in favor of plaintiff, as they did in connection with the registered trademark.  Both parties are (or were) teachers of "Praying Mantis Kung Fu" in Dutchess County.  However, plaintiff has yet to present any evidence of actual consumer confusion since the termination of the Agreement under factor four.  Defendant

20

may not have had good faith in adopting the mark, as evidenced by the filling of the d/b/a under factor six, but because of the apparent length of time that Praying Mantis Kung Fu has been in existence and the use of that name by others, defendant may well be entitled to use the name of the form.

In short, plaintiff's unregistered mark "Praying Mantis Kung Fu" is not entitled to a high level of protection because of its descriptive nature and non-exclusive usage.

Additionally, plaintiff has not established that harm (i.e., confusion) resulting from defendant's use of the term "Praying Mantis Kung Fu" is imminent.  Plaintiff clearly slept on his rights.  He received complaints from persons who obviously knew of his association with Praying Mantis Kung Fu prior to terminating his agreement with plaintiff in April 2004, and he heard from Mr. Horne about the latter's two visits to defendant's home in June 2005.  Defendant filed his d/b/a certificate in 2004, after the Agreement was terminated.  However, plaintiff did absolutely nothing to protect any rights he might have in the service mark "Praying Mantis Kung Fu" – including attempt to register the mark – until September 2006, when he filed this lawsuit. The fact that plaintiff delayed in challenging defendant's use of the name "Praying Mantis Kung Fu" hardly supports a claim that his "harm is imminent and irreparable."  Origins Natural Res., Inc. v. Kotler, No. 01-1881, 2001 U.S. Dist. LEXIS 5906, at *6 (S.D.N.Y. 2001).  By sleeping on his rights, "Plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues."  Gillette Co. v. Ed Pinaud, Inc., 178 F. Supp. 618, 622 (S.D.N.Y. 1959).

As for the other unregistered mark, "Having Demonstrated Great Progress in the Art and Way," there is no evidence whatever in this record that the defendant has made any use of this

21

phrase – it is not part of his d/b/a certificate – or that the phrase has any public association with plaintiff.  There is, therefore, no basis on which to enter a preliminary injunction against defendant's use of this unregistered mark.


**II. State Law Claims**

As noted above, plaintiff asserts that he is entitled to injunctive relief under the common law of the State of New York in Count VII of the complaint.  (Compl. ¶¶ 73-76).  But common law copyright no longer exists for works that were created after the 1976 Act.  17 U.S.C. § 301 ("no person is entitled to any such right in any such work under the common law or statutes of any State.").  The 1976 Copyright Act preempts all state common law copyrights for works "fixed in a tangible medium" after the statute's effective date.  Therefore, no common law copyright protection exists for any of the instructional materials and videotapes used in conjunction with "Praying Mantis Kung Fu" that were created after 1976.  Similarly there is no common law protection for the instruction manual titled "Teachings of the Temple of I Cheng," published in 1970, because, as discussed above, publication of that manual (but distributing it to students) divested the common law copyright.  Count VII of the complaint is, therefore, dismissed sua sponte by the court.

There still exists a common law trademark infringement claim under New York General Business Law § 360-1.  (See Compl. ¶¶ 77-80).  This law provides: "Likelihood of injury to business reputation or dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement or a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or

Law § 360-1 (McKinney 2006).  However, the Second Circuit has held that this statute only protects "extremely strong marks."  <u>Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.</u>, 875 F.2d 1026, 1030-33 (2d Cir. 1989) (Sweet, J. concurring).  As shown above, plaintiff's unregistered marks are not extremely strong, and plaintiff has not offered sufficient evidence to permit the court to assess the strength of the registered mark "Temple of I Cheng."  Therefore, plaintiff has not demonstrated likelihood of success on his state law trademark claim.

Additionally, to prevail on a New York State statutory or common law trademark infringement claim, a plaintiff "must establish that the symbols in which this property right is asserted are valid, legally protectable trademarks; that they are owned by plaintiff; and that defendant's subsequent use of similar marks is likely to create confusion as the origin of the goods."  <u>Pirone v. MacMillan, Inc.</u>, 894 F.2d 579, 580-81 (2d Cir. 1990).  The analysis discussed above is, therefore, equally applicable to plaintiff's state and federal trademark claims.  Plaintiff's failure to qualify for a preliminary injunction under federal law means that he has failed to meet his burden under state law as well.

### Conclusion

For the foregoing reasons, plaintiff's motion for a preliminary injunction is denied.

Dated: April 24,  2007

U.S.D.J.

BY FAX TO ALL COUNSEL